## Prussel *et al.* Appellants, *v.* Knowles.

Where a party goes to trial without objecting to the irregularity of a change of *venue*, he is estopped from raising the objection in the appellate court.

Where, in an action of trespass against several defendants, the jury returned a general verdict against all of them, and left the court-room; held that it was competent for them, on returning immediately into court, to show that the verdict had been given through mistake, and correct it by finding against some of the defendants only.

Where, in an action for breaking open a grocery and destroying liquors, a letter written by one of the defendants and others to plaintiff, requesting him to meet them at the counting-house of B. with the invoices of the liquors destroyed, that they might settle with him for the same: it was held that the letter was proper evidence to go before the jury, whose province it was, in view of all the testimony, to determine whether the letter contained an admission of liability, or a proposition merely to buy the plaintiff's peace.

An appellate court will not determine upon the admissibility of particular testimony, where the bill of exceptions sets out only part of the evidence adduced on the trial.

APPEAL from the circuit court of the county of Lafayette.

This was an action for trespass, brought by Peter Knowles, at the November term, 1836, of the circuit court for Pontotoc county, against John Prussel, Joel Pinson, Charles W. Martin, John Perryman, William H. Allen, Charles McDonald and Hiram McMillen. The foundation of the action as set forth in the declaration, was the breaking open the grocery store of the plaintiff, and the destruction of a large quantity of his liquors. The plea "not guilty," was filed by all the defendants. The issue was submitted to a jury, who, not being able to agree upon a verdict, a juror was withdrawn, and the case ordered to be continued until another term. The plaintiff then applied to the court to change the venue, which was ordered, and the suit transferred to the county of Lafayette.

At the May term, 1837, of the circuit court of Lafayette county the defendants applied for a continuance, which was granted them, at the same time the death of Allen, one of the defendants, was suggested. At the following term, there was a verdict for plaintiff for the sum of eleven hundred dollars. In the course of the

trial, the plaintiff offered to read to the jury a letter written by Pinson, one of the defendants, and two other persons, addressed to the plaintiff, proposing to him to meet them at Barenger's counting-room, with the invoices of the liquors destroyed, and that they would settle the same with him.    To the reading of this letter defendant's counsel objected, but the court overruled the objection, and permitted it to be read.

The bill of exceptions also states, that after the jury had returned their verdict and separated, they were called together again by the court, and permitted to explain it so as to find against the appellants only, and not against Allen, whose death had been previously suggested on the record, nor against McDonald, another defendant.

Most of the members of the jury had left the court room; one James D. Harding, a juryman, however, was present, when one of the counsel for the plaintiff arose and stated to the judge that he had learned from one of the jury, that there was a mistake in the verdict, and that the jury did not intend to find against Allen, who was dead, nor against McDonald.    This suggestion was immediately sanctioned by the juror, who was then present, and who had not left the court house.

The court then directed the verdict to be changed, so as to correspond with this statement.    Immediately after this, the whole panel came into court and confirmed the statement of the juror. A motion was then made to set aside the verdict, upon the ground of the above alteration of it, which was overruled, and the case came to this court by appeal.

W. Y. Gholson, for the appellants, assigned the following errors :

1. That the venue was irregularly changed from the county of Pontotoc to the county of Lafayette ; no grounds or reason for such change being shown ; the order for that purpose appearing to have been made on the same day, but after a mis-trial had been had and a continuance ordered, without any notice to the defendants below of the application, and without their consent.

2. That no sufficient record from the county of Pontotoc was transmitted to the county of Lafayette, in pursuance of the order for a change of venue, on which to found the subsequent proceedings in the circuit court of the latter county.

3. That the record from the circuit court of Pontotoc was not transmitted in a proper and legal manner to the circuit court of Lafayette.

4. That in the record in this case there is no declaration, pleading or issue between the parties on which a verdict could be legally found, or a judgment rendered, none of the proceedings in the circuit court of Lafayette county recognizing or referring to the transcript of a record filed in the clerk's office of said court by Peter A. Knowles.

5. That the circuit court of Lafayette county had no jurisdiction of this case.

6. That the court permitted the letter copied in the second bill of exceptions to be read as evidence to the jury, whereas the same was a proposition for a compromise, and should have been excluded.

7. That the court permitted said letter to be read as evidence against all the defendants below, whereas, the same, if evidence at all, was only evidence against Joel Pinson, one of the defendants below.

8. That the court below refused to set aside the verdict entered in this case and grant a new trial, whereas said verdict was irregularly and illegally rendered, and the same should have been set aside and a new trial awarded the defendants below.

Barton, *contra.*

Mr. Justice TROTTER delivered the opinion of the court.

Before we proceed to notice the main questions which are presented in the two bills of exceptions contained in the record, it will be proper to dispose of a preliminary objection which has been urged in the argument here. It is said, the court which tried this cause had no jurisdiction of it, because the record does not show a regular change of the venue from Pontotoc to Lafayette county. It is not deemed important to enter upon a strict examination and interpretation of the whole record in all its parts with a view to discover whether the order for the *change of venue* is in strict compliance with the directions of the statute. It is sufficient to remark, that if there is any irregularity in this respect,

the appellants should have objected in the court below.   By submitting to a trial, they waived any right to insist upon it in this court.   It is a general rule, subject to very few exceptions, that a party shall not be permitted to assign for error in the appellate court, matter not insisted on in the court below.   This cannot be included in any of the exceptions recognized in this court.   In the case of Owen *v.* Owen, Hardin's Rep. 158, the court of appeals of Kentucky recognized this rule under circumstances exactly similar to the case at bar.   The venue had been changed to another county, and the regularity of the proceedings connected with the order were questioned for the first time in the appellate court.   But it was said by the court, that as the party went to trial in the county to which the cause was transferred without objection, it would be doing great injustice to turn the other parties round then, after incurring great expense and trouble, which might have been avoided if exception had been taken in proper time, in the court below.   This court has heretofore, in several instances, adopted this principle.   It was fully acted on at the last January term in the case of Randolph *v.* Doss and Wife, 3 Howard, 214, and it will be adhered to, as one which is essential to maintain the true purposes of an appellate jurisdiction and prevent injustice and oppression.

The other errors which have been insisted on are embraced in two questions.   1st. Did the court below err in permitting the letter of Joel Pinson, one of the defendants, to be read to the jury? And secondly, is the verdict affected by the alteration made in it as set forth in the bill of exceptions?

The letter referred to in the first assignment of error, was written to the plaintiff and Samuel Knowles before the commencement of this suit, and was signed by Joel Pinson and two others, who are not connected with this cause.   It recites that they had " been appointed a committee to investigate and settle the claims of the Messrs. Knowles for liquors destroyed by order of the committee of vigilance," and requests their attendance before them at. a time and place specified, and that they will bring their invoices so as to establish the value of the liquors, &c.   The introduction of this testimony was objected to, on two grounds.   1. That no admission of Joel Pinson could bind the other defendants.   And

2. Because it was written during a treaty for a compromise, and therefore amounted to no more than an offer to buy *his peace,* and was not evidence against Pinson himself.

None of the evidence submitted to the jury is stated in the record besides this letter, and it is therefore extremely difficult to decide the question of its admissibility. Unconnected with other proof it could neither establish the liability of Pinson, nor that of any one of the other defendants. But the appellants have not stated in either of their bills of exceptions the whole of the testimony in the cause, which renders it impossible for the Court to determine what influence it may have exerted over the verdict. From any thing which appears upon the record, we are not at liberty to infer that there was not proof sufficient to authorise the verdict, and if so it could not be disturbed for the single ground of the improper admission of a letter which, by itself, could have very little weight either way. If this court were to reverse a judgment of a circuit court, overruling an application for a new trial, when the record did not profess to state the whole of the testimony in the cause, the most intolerable mischief might and must be the consequence. This doctrine has been maintained on several occasions by this court. In the case of Leech *v.* Lebuzan & Staunton, 2 Howard, 909, the bill of exceptions stated that a witness, who had not been sworn, was examined upon the issue before the jury. After the verdict, a motion was made for a new trial, which was overruled. But the record did not show that this was all the testimony, and the judgment was affirmed. It was therefore proper to let this testimony go to the jury. It was their peculiar province to decide upon its weight, in connection with the other evidence, and also to find how far it could bind the other defendants. It was with them to pronounce whether it was a mere *peace offering,* or the candid admission of a fact which did exist. For there is a material distinction in this respect which it is important to observe.

It never was the intention of the rule which excludes admissions under a treaty of compromise, to shut out the truth; but simply to repel any inference from a proposition made, not with design to admit the existence of a fact, but with a view solely to buy one's peace. If an admission is made however, because it is

a fact, the evidence to prove it is competent, whatever may have been the motive for the confession.    Hartford B. Company *v.* Granger, 4 Conn. Rep. 148.    2 Starkie's Evid. 38.    And these are questions for the jury, under the instructions of the court. Whether there was testimony in this case that Joel Pinson was a member of the *committee of vigilance,* by whose order the property of the plaintiff was destroyed, or whether the other defendants belonged to that committee, we are not informed.    Neither does it appear whether Pinson acted in concert with them.    In the absence of such proof the letter could not have fixed their or his liability.    With it, the admission was properly left to the jury. All these were inquiries properly before the court and jury, and whether they were satisfied by the facts, we have no adequate means to determine.    It is deemed sufficient that there is nothing in the record to repel the legal inference, that the verdict and judgment were based upon sufficient proof.

The other assignment of error questions the legality of the verdict on account of the alteration of it which was allowed after it had been returned into court, and the jury discharged.    This objection is not to any misbehaviour in the jury, nor any improper conduct of the plaintiff.    But it is contended that the power of the court or the jury over the verdict ceased, as soon as it was handed to the clerk, and the jury dismissed.    The verdict handed in found the defendants all guilty.    The juror who yet remained in the court room, stated as soon as his attention was called to the subject, that it was not the intention of the jury to find against Allen, and gave a very sensible reason for it, which was, that he was dead, neither against McDonald.    When the other members of the panel were brought before the court, they very readily gave the same explanation.    This explanation of the jury is objected to, because it tended to impeach their verdict, and that their statement could not be received for that purpose.

The rule is well settled, that a juror shall not impeach his verdict, and has been fully recognised in this court.    If, in ordinary cases, the verdict is contrary to evidence or the law, a new trial may be granted.    But this should appear from the evidence given on the trial, and not by discoveries made by exploring the recesses of the jury room.    Such a practice could not be tolerated without

inviting the losing party in all cases to tamper with the jury, and few verdicts could stand.   Courts of justice have, therefore, adopted the rule that a juror shall not be permitted to repudiate his own conduct, or to invalidate his verdict.   Dana *v.* Tucker, 4th John. Rep. 486.   Taylor *v.* Giger, Hardin's Rep. 589.   It has, however, never been held to be repugnant to the principles or policy of this rule to permit the jury to fortify and sustain their verdict, or to show by affidavit the verdict which they did really intend to find.   Cochran *v.* Street, 2 Wash. Rep. 79.   1 Burr,_383.

These cases go upon the ground of permitting the court to correct the verdict when it appears that the jury labored under a mistake at the time of rendering it.   In the case of Blackly *v.* Sheldon, 7 John. Rep. 32, it was decided that the court might send the jury back to re-consider their verdict, if it appears to be a mistaken one. This is constantly done; sometimes upon an intimation from the judge and more frequently from a suggestion of one of the parties or his counsel. It is highly convenient and conducive to justice to suffer mere *slips* of the jury to be remedied.   Can there be any distinction in principle, between the case at bar, and that of sending the jury back before they are divested of the case by a manual delivery of the papers to the clerk?   Does the naked fact of their separation before the discovery of the error deprive the court of this salutary power.   Jurors sometimes, after retiring to consider of their verdict, separate of their own accord, but this though a great misbehaviour in them, has not been considered sufficient to defeat the verdict without showing some fault or improper interference in the party, 1 Am. Dig. 224.   The separation in the case before us was by permission of the court, and there is no malconduct or interference alleged against the plaintiff.   Was it then necessary to order a *venire de novo?*   In the case of Cagan *v.* Eben *et al.,* 1 Bur. 383, Lord Mansfield permitted the verdict to be corrected on motion, and the affidavits of eight of the jurymen. There the defendant justifies the trespass complained of, under a right of way, over the plaintiff's ground, to two *closes,* to wit, *Broadmoor* and *Three Acres.*   And upon this, *two issues* were taken, and the jury returned a general verdict of *not guilty.*   The affidavits of the jurymen stated that it was the intention of the whole jury to find one of the issues for the defendant, and the

second one for the plaintiff, and that the mistake was discovered an hour *after* the verdict was *handed in,* but not until the judge had gone to his lodgings.   The verdict was *set right* by making it conform to the finding intended by the jury.   It was not thought necessary to drive the plaintiff in that case to the expense and trouble of a new trial.   The case of Mayo *v.* Archer, 1 Strange 514, was decided on the same principle.   It went upon the ground, as the other did, that the verdict was wrong by *mere mistake,* and that to rectify it was consistent with *right and justice.*   In the case before us, the jury had a right to find some of the defendants guilty, and others not; and if they thought McDonald not guilty, he was entitled to the benefit of their verdict, and ought not to be deprived of it by the mistake which occurred at the time of delivering it.   Nor was the court bound to send the case to a new jury.   Let the judgment be affirmed.